GIFFORD–HILL & COMPANY, INC., Appellant,

v.

FEDERAL TRADE COMMISSION et al.

No. 74–2024.

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Argument Oct. 15, 1975.

Decided Nov. 20, 1975.

Peter J. Nickles and John D. Taurman, Washington, D. C., were on the brief for appellant.

Carla A. Hills, Asst. Atty. Gen. at the time the brief was filed, Earl J. Silbert, U. S. Atty., Leonard Schaitman and Neil H. Koslowe, Attys., Appellate Section, Dept. of Justice, Gerald Harwood, Asst. General Counsel, F.T.C., and John T. Fischback and Clarence Laing, Attys., F.T.C., were on the brief for appellees.

Before WRIGHT, TAMM and WIL-KEY, Circuit Judges.

PER CURIAM:

The Federal Trade Commission has instituted an adjudicatory proceeding against plaintiff-appellant Gifford-Hill & Company. FTC Docket No. 8989 (August 7, 1974). In that proceeding the FTC will determine whether Gifford-Hill, a cement manufacturer, violated the antitrust laws by acquiring a producer of construction aggregates.[1] Following issuance of the FTC's administrative complaint, Gifford-Hill filed this suit in the District Court in an effort to have the complaint nullified on the ground that the decision to prosecute had been made without compliance with the procedures mandated by the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347 (1970). The company

claimed that before deciding to proceed with its complaint the FTC should have considered the possibility that undesirable environmental consequences might result from an eventual order requiring it to divest the aggregates producer.[2]

Gifford-Hill's motion for a preliminary injunction was denied, primarily because the District Court concluded that NEPA does not apply to the type of agency action at issue here and that plaintiff's probability of ultimate success on the merits was, therefore, too low to warrant issuing the injunction.[3] This appeal was taken from the denial of the preliminary injunction. 28 U.S.C. § 1292(a)(1) (1970). Without considering the merits of the NEPA complaint, we affirm.

I

A plaintiff has standing to challenge an administrative action in federal court if the challenged action caused it "injury in fact" and if "the alleged injury was to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated."[4] *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Ass'n of Data Processing Serv. Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Gifford-Hill satisfies the first of these criteria since the FTC's action puts the company to the expense of making its defense and subjects it to the risk of an adverse ruling by the Commission. This "injury in fact," however, does not affect an interest even arguably "within

1. Gifford-Hill acquired the Becker Sand & Gravel Company, which strip mines sand and gravel, in 1972.

2. The gravamen of Gifford-Hill's argument is that if it is forced to divest Becker, *see* note 1 *supra,* it will be compelled to open additional strip mines of its own in order to provide the materials it now receives from Becker's mines.

3. *Gifford-Hill & Co. v. FTC,* D.D.C., 389 F.Supp. 167 (1974).

4. The Supreme Court has not had occasion to determine whether the "injury in fact" must be to an interest within the "zone of interests" protected by the statute, but the better interpretation of the language quoted in text and of *Barlow* and *Ass'n of Data Processing Serv. Organizations* is that such a congruence is required. *See, e. g., F. Anderson, NEPA in the Courts* 43 (1973); *K. Davis, Administrative Law Treatise* § 22.00–1 at 709 (Supp.1970).

the zone of interests to be protected or regulated" by NEPA. NEPA's concern is with protection of the environment, not with the desire of parties to prevent or/ delay administrative efforts to enforce the antitrust laws.[5] *See Zlotnick v. District of Columbia Redevelopment Land Agency,* D.D.C., 2 *Envir.L.R.* 20235, 20236 (1972), *affirmed by order,* 161 U.S. App.D.C. 238, 494 F.2d 1157 (1974).

. Gifford-Hill bases its claim to have standing to raise the NEPA question primarily on *National Helium Corp. v. Morton,* 10 Cir., 455 F.2d 650 (1971), *affirming,* D.Kan., 326 F.Supp. 151 (1971), and on the cases which have followed that decision. Reply brief of appellant at 21–23. In *Helium* the Tenth Circuit held that the plaintiff company, which extracted helium from natural gas at the well site and sold the helium to the Government, had standing to challenge the failure of the Secretary of the Interior to file an environmental impact statement before cancelling the Government's contracts to purchase helium. The appellate court essentially agreed with the District Court's conclusion in *Helium* that although

> [i]t may seem passing strange to see plaintiffs, the off-spring of corporate giants of the oil and gas industry, garbing themselves in the status of private attorneys general for the public interest, yet this Court perceives no valid reason why they cannot assert this role as protector of the public interest, along with their own. The Court finds that plaintiffs do have requisite standing to maintain this action.

326 F.Supp. at 157.

We have two substantial reasons for concluding that *Helium* and its progeny do not control this case. First, in *Helium* the mechanism of plaintiff's injury was directly and immediately related to the concerns of NEPA. National Helium's injury resulted from the cancella-

tion of a Government program designed to encourage capture of helium at the well site in order to prevent that gas from being wasted and to assure an adequate supply of helium for necessary uses. As both the Tenth Circuit and the District Court explained, the proper use and conservation of depletable natural resources are among NEPA's primary concerns. 455 F.2d at 655; 326 F.Supp. at 154–155. Thus, although the company and the statute were moved by different considerations, they shared a common interest in the helium purchase program. Gifford-Hill can point to no similar interest, shared by it and NEPA, which is injured by the FTC's decision to prosecute.

■ The second reason for distinguishing *Helium* from the present case is that the former involved a challenge to an "agency action" under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 704 (1970). *See* 455 F.2d at 654; 326 F.Supp. at 154. As the *Helium* District Court explained, the APA's provision that "[a] person 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action'" should have access to judicial review, 5 U.S.C. § 702, played a major role in the court's decision that National Helium had standing to raise the NEPA question. *See* 326 F.Supp. at 157, *discussing Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). In the present case, however, Gifford-Hill must demonstrate its right to challenge the FTC's compliance with NEPA without the aid of the APA, since the decision to institute an adjudicatory proceeding is not an "agency action"—and most certainly not a "final agency action"—made reviewable by the latter statute. *See* 5 U.S.C. §§ 551(13), 702, 704.

## II

■ Our conclusion that the FTC's decision to initiate an adjudicatory pro-

---

**5.** Gifford-Hill has not, of course, been able to allege that its use or enjoyment of the environment has been harmed or endangered by the FTC's action. *Cf. Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

ceeding is not an action made reviewable by the APA indicates the second major difficulty with appellant's action: this suit is premature. Jurisdiction to review antitrust orders of the FTC is conferred on specified Courts of Appeals by 15 U.S.C. § 21(d) (1970). "All constitutional, jurisdictional, substantive, and procedural issues arising in Commission proceedings may be considered" in the statutory review proceeding. *Frito-Lay, Inc. v. FTC,* 5 Cir., 380 F.2d 8, 10 (1967). Except in extraordinary cases, there is no reason to allow a litigant to undermine this congressionally created method of judicial review of FTC decisions by bringing an interlocutory appeal, even though that appeal be brought as an independent suit in the District Court. *Id.; cf. Ecology Action v. United States Atomic Energy Comm'n,* 2 Cir., 492 F.2d 998 (1974); *Thermal Ecology Must Be Preserved v. Atomic Energy Comm'n,* 139 U.S.App.D.C. 366, 433 F.2d 524 (1970) (*per curiam*).

■ The wisdom of this refusal to entertain most interlocutory appeals is well illustrated by the present case. Gifford-Hill's environmental claim is based on the possible result of a divestiture order which may never be entered, either because the challenged acquisition is found lawful or because some other remedy is deemed more appropriate. Moreover, during the adjudicatory proceeding both Gifford-Hill and the staff of the FTC can present evidence about environmental factors. That evidence can be considered as it relates to shaping a remedy, if the acquisition violates the antitrust laws, and the administrative law judge and the FTC can determine whether an environmental impact statement is required before a final order is entered.[6] In view of these opportunities for the FTC to comply with NEPA's requirements during the adjudicatory proceeding and of the ability of Gifford-Hill to challenge any failure to do so in its appeal from the Commission's final order, allowing this action to be maintained would serve no purpose other than the company's apparent desire for delay.[7]

For the foregoing reasons, the decision of the District Court is affirmed and the case is remanded with instructions to dismiss.

*So ordered.*

---

**6.** *See* Note, *Gifford-Hill & Co. v. FTC: Does NEPA Apply to Law-Enforcement Adjudicatory Functions of an Agency?,* 1975 *Duke L.J.* 743; Council on Environmental Quality, Advisory Memorandum, brief for defendants-appellees at 24a–27a.

**7.** We recognize that our holding effectively means that an agency's decisions to institute adjudicatory proceedings, and *a fortiori* its decisions to institute investigations to determine whether adjudication is warranted, are outside the scope of NEPA. Since these decisions in no way foreclose the agency from considering environmental factors before making a final decision to require some action, we are convinced that this result is proper. The decision to investigate or to adjudicate does not involve the type of "irretrievable commitment of resources" which NEPA insists must follow rather than precede consideration of environmental factors. *Cf. Scientists' Institute for Public Information, Inc. v. Atomic Energy Comm'n,* 156 U.S.App.D.C. 395, 414, 481 F.2d 1079, 1098 (1973); 87 *Harv.L.Rev.* 1054–1059 (1974).