The **CITY OF BATTLE CREEK**, a municipal corporation, and the County of Calhoun, a municipal corporation,

v.

**FEDERAL TRADE COMMISSION** and Michael Pertschuk, Chairman, David A. Clanton, Member, Paul Rand Dixon, Member, and Robert Pitofsky, Member, as officers of the Federal Trade Commission.

No. K79–595 CA9.

United States District Court,
W. D. Michigan, S. D.

Dec. 19, 1979.

Peter W. Steketee, Grand Rapids, Mich., for plaintiff.

James S. Brady, U. S. Atty., Grand Rapids, Mich., David M. Fitzgerald, F. T. C., Washington, D. C., for defendants.

## OPINION AND ORDER

### INTRODUCTION

HILLMAN, District Judge.

This is an action in which the City of Battle Creek and Calhoun County seek to enjoin the continuation of an administrative hearing presently pending before the Federal Trade Commission until such time as the administrative law judge complies with the National Environmental Policy Act (42 U.S.C. 4321, et seq., hereinafter NEPA),[1] by ordering the preparation and issuance of an environmental impact statement.

In April of 1972, the Federal Trade Commission initiated an anti-trust enforcement proceeding against four manufacturers of ready-to-eat cereal—Kellogg, General Foods, General Mills and Quaker Oats— alleging that these four companies had violated and continued to violate Section 5 of the Federal Trade Commission Act (15 U.S.C. 45). The complaint in that action alleges that these four manufacturers have established a "shared monopoly" of the cereal market in violation of the anti-trust laws. Quaker Oats has subsequently been dismissed from the action.

In April of 1976, after discovery and other pre-trial activity, an adjudicatory proceeding commenced before an administrative law judge within the FTC. In the course of these proceedings, the Complainant Counsel, a staff attorney employed by the Bureau of Competition of the FTC, proposed as a remedy, should liability be found, divestiture of assets of the cereal companies, establishment of new "spin-off" cereal firms from those assets and licensure of brand names of the newly-established companies. This relief was originally proposed in an order accompanying the complaint, again in a pre-trial brief of Complainant Counsel dated February 17, 1976, and finally proposed on the record in the administrative proceeding on September 28 and 29, 1977.

Kellogg maintains its corporate headquarters, research and development facilities, production facilities and packaging and shipping facilities in Battle Creek. General Foods Corporation and General Mills Corporation have production facilities also located in Battle Creek.

The plaintiffs, the City of Battle Creek and the County of Calhoun, have filed this suit asking that the administrative proceedings be enjoined and that the Commission be directed by this court to prepare an environmental impact statement in compliance with the National Environmental Policy Act (42 U.S.C. 4321, et seq.). The plaintiffs allege in their complaint and have supported by affidavits accompanying the complaint, that the proposal of divestiture of assets, if ordered by the Commission and implemented would result in production slow-down, which would necessarily include serious unemployment in the Battle Creek

---

1. The National Environmental Policy Act is legislation of far-reaching significance which includes a congressional declaration of a national environmental policy and certain detailed procedures designed to assure that that policy is implemented and included as a viable part of all federal agency decision-making where the environment may be significantly affected.

The Act also establishes a Council on Environmental Quality which has been empowered to prepare guidelines for implementation of the Act by federal agencies, oversee implementation of the Act by federal agencies and report to and advise the congress and the president on the progress of federal agencies in achieving the underlying purpose of the Act.

community and threaten the financing of the construction and maintenance of improvements to the City's sewage collection and treatment facilities. The plaintiffs estimate, based on a job impact study which has been alluded to in affidavits but not introduced, that the employees of Kellogg, General Mills and General Foods would suffer the loss of 2,650 jobs as a direct impact of divestiture. The expectation is that 1,000 of these jobs would be reinstated within two years as production capacity is re-established. Directly related to this forecasted unemployment is the expectation in the opinion of experts in the community, that the City would experience an increase in criminal activities, marital instability and divorce, family violence and child abuse, a reduction in the City's tax base, general economic blight and a necessary reduction in the funding of existing social services designed to deal with the very behavior problems that would be exacerbated by wide-spread unemployment.

The City of Battle Creek has recently embarked on additional construction and improvement of the City's sewage collection and treatment facilities. In a somewhat speculative and tenuous line of causation, the plaintiffs allege that a decrease in production at the cereal plants will jeopardize the financial feasibility of this construction and impact adversely on the environment. There are two aspects to this allegation. Substantial reduction in the contribution of waste from Kellogg, General Mills and General Foods will reduce their financial contribution to the construction of this system and proportionately increase the unit costs of other property owners, thereby discouraging many property owners from hooking up to the sewage system. Those property owners who do not hook up to the system will continue to discharge waste in individual septic tank systems, a method of sewage treatment that has been determined to be inadequate in that it does not adequately prevent pollutants from seeping into the ground water. In addition, it is alleged that the reduction of wastes from cereal companies would result in serious reduction in flow of effluent through the trunk lines of the sewage collection system, to the extent that solid wastes would accumulate in the trunk line. On decomposition, the solid waste deposits would produce pollutants that would escape and create air pollution. Increased cost of maintenance to control this potential air pollution problem would frustrate the City's ability to finance the system. In addition, the City projects that reduction in the City's tax base will necessitate severe cuts in financing of parks and recreation.

Given these allegations of fact and expert opinion as to the foreseeable results of implementation of a divestiture order, the plaintiffs maintain that the FTC must comply with Section 102(2)(C) of the NEPA (42 U.S.C. 4332(2)(C)),[2] and prepare and issue an environmental impact statement, because these effects amount to a significant adverse impact upon the quality of the human environment in Battle Creek, within the meaning of that section of the Act.

The defendants contend that the FTC has not unreasonably refused to prepare an environmental impact statement. They rely on several arguments to support this position. First of all, the FTC regulations exempt all adjudicatory proceedings from compliance with that section of the NEPA which requires an environmental impact statement. (16 C.F.R. 1.82(d)).[3] This blan-

**2.** Section 102(2)(C) provides: "(2) all agencies of the Federal Government shall . . . (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the

relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

**3.** The Federal Trade Commission Regulations at 16 C.F.S. 1.82(d), entitled, Declaration of policy, provides: "(d) Nothing in this procedure shall be construed as stating or implying that

ket exemption, the defendants maintain, is valid, having been approved by the Council on Environmental Quality in their Advisory Memorandum of January 31, 1975,[4] and in their most recent guidelines (40 C.F.R. 1508.18) and, therefore, is entitled to great deference, *Andrus v. Sierra Club,* 442 U.S. 347, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979).

Whether or not the blanket exemption of the FTC regulation is dispositive of the question presented by the plaintiffs' complaint, the defendants contend that though the effects which the plaintiffs raise may be serious matters, they are not within the scope of the effects which require preparation of an environmental impact statement. The effects which the plaintiffs allege are characterized by the defendants as socioeconomic effects that do not constitute "significant effects on the quality of the human environment".

But, if the allegations raised by the plaintiffs do amount to environmental effects, which merit the study and consideration that an environmental impact statement entails, the defendant suggests that now is not the time to introduce those considerations into the administrative process. If an environmental impact statement is required in order to comply with the NEPA, the defendants argue that it must be prepared, not at this stage of the proceedings, but only after the findings and conclusions of the administrative law judge have been submitted to the Commission for review. The defendants maintain that if there is merit in the plaintiffs' claims, those claims have been raised prematurely.

The defendants allege that the action is premature in another respect. That is, that the plaintiffs have failed to exhaust administrative remedies within the FTC. Defendants point out that the plaintiffs have not presented to the FTC the allegations of fact and expert opinion which have accompanied the complaint in this action and which support their conclusion that proposed remedies entail environmental effects. I agree that the plaintiffs have not exhausted administrative remedies. Further, the effects upon the human environment which the plaintiffs raise in their complaint and accompanying affidavits are primarily related to possible future unemployment and are largely socio-economic. Consequently, to this court it appears doubtful (without deciding, however) that the allegations raised by the plaintiffs fall within the scope of those interests intended to be protected by the NEPA. After careful review of the pleadings, the statutes, the regulations and case law, I have concluded that the plaintiffs have administrative remedies available to them which they have neither pursued nor exhausted and that it would be appropriate and beneficial to the proper and efficient resolution of the underlying controversy in this lawsuit that the plaintiffs proceed to exhaust those administrative remedies.

## OPINION

No claim of environmental impact has been raised before the administrative law judge in the *Kellogg* proceedings except for a request by the plaintiffs addressed to the Commission in a telegram dated September 26, 1979.[5] In that communication, the City

section 102(2)(C) of the NEPA applies to . . any adjudicatory proceedings commenced by the Commission."

4. This Advisory Memorandum is entitled, *Application of the National Environmental Policy Act to Enforcement of the Anti-trust Laws by the Federal Trade Commission.* This opinion supports the FTC's own regulation excluding its adjudicatory proceedings from application of Section 102(2)(C) and substantially relies on the conclusion that evidence of environmental impact will be introduced in the administrative proceeding by the parties and that the adversary nature of the enforcement proceedings

may functionally substitute for the inquiry that otherwise would occur under Section 102(2)(C). This court need not and has not reached any conclusion about the validity of this opinion or the subsection of the FTC regulation which it concludes is consistent with the National Environmental Policy Act.

5. The telegram sent by the plaintiffs City and County to the FTC on September 26, 1979, is attached to plaintiffs' complaint and reads as follows: "THE UNDERSIGNED REPRESENTS THE CITY OF BATTLE CREEK AND OR THE COUNTY OF CALHOUN, BOTH LOCATED IN THE STATE OF MICHIGAN. ON THE BE-

of Battle Creek asked that the Federal Trade Commission enjoin proceedings in the Kellogg case until the FTC complied with requirements of Section 102(2)(C) of the NEPA. In support of that request, the City simply asserted that the implementation of the proposed remedy of divestiture of assets would have significant impact upon the quality of the human environment in Battle Creek. The request was not supported by any affidavit explaining the factual circumstances which led the City to conclude that environmental consequences would ensue from divestiture. Neither did the telegram explain the nature of any foreseeable environmental consequences which would lead to the conclusion that an environmental impact statement was required by the terms of the NEPA. None of the evidence or allegations of fact and expert opinion included in the plaintiffs' affidavits which accompany and support their claims in this action accompanied their telegram of September 26, nor have they been introduced in the adjudicatory proceeding. Until that evidence has been introduced, the Commission cannot be expected to involve themselves in the elaborate process of assessment of environmental impact.

The administrative law judge rather generously considered the telegram of the City as a motion under Section 3.22 of the FTC regulations (16 C.F.R. Section 3.22). On October 19, 1979, the administrative law judge issued an opinion denying the plaintiffs' motion for preparation of an environmental impact statement. This opinion relied substantially on the existing regulation of the Federal Trade Commission which excludes all adjudicatory enforcement proceedings from application of Section 102(2)(C) of the NEPA, i. e., 16 C.F.R. 1.82(d).

It is important to recognize what this telegram is not. It is not a motion by the plaintiff to intervene for the purpose of presenting proofs of the nature, extent or significance of any environmental consequences that are likely to result from the order and implementation of divestiture by the FTC. The telegram was not considered by the administrative law judge as a motion to intervene under Section 3.14 of the FTC regulations (16 C.F.R. 3.14). It cannot be fairly construed as an effort by the City to intervene.

HALF OF THE CITY OF BATTLE CREEK AND THE COUNTY OF CALHOUN, WE HEREBY REQUEST THE FEDERAL TRADE COMMISSION TO SUSPEND ITS HEARING IN THE MATTER OF THE KELLOGG COMPANY, A CORPORATION (SIC), ETA (SIC), DOCKETT (SIC) NUMBER 8883, PENDING COMPLETION OF A COMPREHENSIVE ENVIRONMENTAL IMPACT STATEMENT MEETING THE REQUIREMENTS OF THE NATIONAL ENVIRONMENTAL POLICY ACT, 42 U.S.C. § 4321, ET SEQ.

THE COMPLAINT IN DOCKETT (SIC) NUMBER 8883 SEEKS DIVESTITURE OF ASSETS OF KELLOGG COMPANY AND OTHER RELIEF, WHICH RELIEF WILL HAVE A SIGNIFICANT, ADVERSE IMPACT ON THE QUALITY OF THE HUMAN ENVIRONMENT, INCLUDING THE HUMAN ENVIRONMENT IN THE CITY OF BATTLE CREEK AND IN THE COUNTY OF CALHOUN, UNDER THE NATIONAL ENVIRONMENTAL POLICY ACT. THE FTC ACTIONS IN THIS CASE REQUIRE THE PREPARATION OF A DETAILED STATEMENT BY THE AGENCY ON THE ENVIRONMENTAL IMPACT OF THE PROPOSED ACTION, ANY ADVERSE ENVIRONMENTAL EFFECTS WHICH CAN NOT BE AVOIDED SHOULD THE PROPOSAL BE IMPLEMENTED, ALTERNATIVES TO THE PROPOSED ACTION, THE RELATIONSHIP BETWEEN LOCAL SHORT TERM USES OF MANS (SIC) ENVIRONMENT AND THE MAINTENANCE AND ENHANCEMENT OF LONG TERM PRODUCTIVITY, AND ANY IRREVERSIBLE AND IRRETRIEVABLE COMMITMENTS OF RESOURCES WHICH WOULD BE INVOLVED IN THE PROPOSED ACTION SHOULD IT BE IMPLEMENTED, THE LAW REQUIRES THE AGENCY TO CONSULT WITH, AND OBTAIN COMMITMENTS OF OTHER FEDERAL AGENCIES, THE STATES, LOCAL AGENCIES, AND THE GENERAL PUBLIC. THE STATEMENT MUST BE PREPARED SUFFICIENTLY EARLY TO ACCOMPANY THE PROPOSAL THROUGH THE EXISTING AGENCY REVIEW PROCESS. TO OUR KNOWLEDGE NO SUCH STATEMENT HAS BEEN PREPARED EVEN THOUGH THE HEARING IN DOCKETT (SIC) NUMBER 8883 IS SCHEDULED TO RECONVENE SHORTLY AND IS NEARING COMPLETION.

PLEASE NOTIFY THE UNDERSIGNED OF THE AGENCIES (SIC) INTENTIONS WITH RESPECT TO THIS REQUEST BY NO LATER THAN 1 O'CLOCK PM EST ON FRIDAY SEPTEMBER 28 1979."

The recent decision of the Sixth Circuit in *American Motors v. Federal Trade Commission*, 601 F.2d 1329 (6th Cir. 1979), compels the conclusion that the plaintiffs, if indeed they have raised any meritorious claims of environmental impact which the FTC must consider before they issue a final order, must first present evidence of those claims to the FTC.

In *American Motors*, the plaintiff corporation challenged subpoenas which had been issued by the FTC, directing American Motors and other major American automobile companies to produce certain documents relating to production and sale of automobiles. The subpoenas had been issued in the course of an industry-wide investigation conducted by the FTC. Plaintiffs in that case sought from the district judge an injunction enjoining the Commission from enforcing the subpoenas. In reversing the district judge, who had in effect enjoined the FTC subpoenas, the Sixth Circuit held the auto companies were premature in seeking judicial relief. Chief Judge Edwards, speaking for the court held plaintiffs had *not* exhausted their administrative remedies and would have a full opportunity to contest the legality of the subpoenas as well as any prejudicial proceedings against them in any forthcoming FTC enforcement proceeding. That case has recently been affirmed by the Supreme Court.

FTC regulations include a section entitled, *Rules of Practice for Adjudicative Proceedings*, (Part 3—16 C.F.R. 3.1, et seq.). These rules govern procedures in adjudicative proceedings before an administrative law judge or before the full Commission.[6] (3.1 and 3.2) Subsection 3.14 provides a procedure for petitioning the administrative law judge or the Commission for intervention:

Any individual, partnership, unincorporated association, or corporation desiring to intervene in an adjudicative proceeding shall make written application in the form of a motion setting forth the basis therefor. Such application shall have attached to it a certificate showing service thereof upon each party to the proceeding in accordance with the provisions of Section 4.4(b) of this chapter. A similar certificate shall be attached to the answer filed by any party, other than counsel in support of the complaint, showing service of such answer upon the applicant. The administrative Law Judge or the Commission may by order permit the intervention to such extent and upon such terms as are provided by law or as otherwise may be deemed proper.

FTC regulations also provide for an interlocutory appeal to the full Commission from the ruling of an administrative law judge granting or denying an application for intervention under the provisions of Subsection 3.14 (see 16 C.F.R. 3.23(a)(3)). The plaintiffs have neither pursued nor exhausted this two-step process available to them. The administrative hearing now in progress is a more appropriate forum for plaintiffs' complaint to be aired. The plaintiffs have simply made a bold assertion to the FTC that an environmental impact statement is needed immediately and that the administrative proceeding must be stayed to await completion of that process outlined in Section 102(2)(C) of the NEPA. Had that assertion to the FTC been supported by facts with accompanying affidavits by experts similar to those introduced by affidavit in this court, that would have established at least some grounds for the administrative law judge to assess the seriousness, the

---

**6.** Subsection 3.1, entitled, *Scope of the rules in this part*, provides: "The rules in this part govern procedure in adjudicative proceedings. It is the policy of the Commission that, to the extent practicable and consistent with requirements of law, such proceedings shall be conducted expeditiously. In the conduct of such proceedings the Administrative Law Judge and counsel for all parties shall make every effort at each stage of a proceeding to avoid delay.

Subsection 3.2, entitled, *Nature of adjudicative proceedings*, provides: "Adjudicative proceedings are those formal proceedings conducted under one or more of the statutes administered by the Commission which are required by statute to be determined on the record after opportunity for an agency hearing . . . ."

scope and the significance of the environmental impact foreseen by the City and County. It is clear that under Section 102(2)(C), an initial assessment of the "significance" of the environmental impact must be made in order to determine that compliance with that section of the act is required at all. Most courts agree that that threshold assessment of environmental effects is the responsibility of the agency. See *Joseph v. Adams*, 467 F.Supp. 141, 150–151 (E.D.Mich.1978); *Hanly v. Kleindienst*, 471 F.2d 823, at 828 (2nd Cir. 1972), *cert. denied* 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973). *City of Davis v. Coleman*, 521 F.2d 661, 670–671 (9th Cir. 1975). The role of the court in the absence of exceptional circumstances should be confined to reviewing a decision which should properly first be made by the agency. *Joseph v. Adams, supra* at 152.

■ The doctrine of exhaustion of administrative remedies is well established in administrative law. 3 Davis, *Administrative Law Treaties*, Section 20.01, et seq. The doctrine provides that a party is not entitled to judicial relief for an injury until available and prescribed administrative remedies have been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the Supreme Court discussed the doctrine of exhaustion of remedies and identified the underlying interests served by requiring exhaustion: (a) The interest in giving the administrative agency an opportunity to make a factual record and exercise its discretion and expertise without the threat of litigious intervention; (b) the interest in discouraging frequent and deliberate circumventing of the administrative process; (c) the interest in having resolution of questions of fact in the administrative process, which may effectively reduce or eliminate entirely the need for judicial review and serve the important interest of judicial effi-ciency. *McKart, supra* at 193–195, 89 S.Ct. at 1662–1663; *United States v. Newmann*, 478 F.2d 829, 831 (8th Cir. 1973), *Atlantic Richfield Company v. FTC*, 398 F.Supp. 1, 11 (S.D.Texas, 1975). All of these interests can potentially be served by exhaustion of administrative remedies available to the plaintiffs.

■ There are exceptions to the doctrine of administrative remedies. The classic exception is where the available administrative remedy is inadequate and to require the party to exhaust those remedies would be a futile gesture. *Porter County Chapter of Izaak Walton League v. Costle*, 571 F.2d 359, 363 (7th Cir., 1978), *Pence v. Kleppe*, 529 F.2d 135 (9th Cir. 1976). The plaintiffs here seek to include themselves within that exception. Because the FTC relies on its regulation 1.82(d), which completely excludes all adjudicatory proceedings from the application of the NEPA requirements of an environmental impact statement, plaintiffs argue that further exhaustion will be meaningless and result in irreparable harm to their interests both substantive and procedural under the NEPA. The FTC has not welcomed the plaintiffs nor the interests which they seek to raise. This fact, however, does not support a conclusion that exhaustion of administrative remedies by the plaintiffs would be meaningless.

Application of the doctrine to this case requires an understanding of the purposes the doctrine seeks to serve, the particular administrative scheme involved and the nature of the duties and procedures under the NEPA. In *McKart*, the court proposed and applied a balancing test. The real test is whether the interests underlying the exhaustion rule clearly outweigh the severity of the burdens that would be imposed upon the plaintiff if it is denied judicial review.

The NEPA establishes a strong national environmental mandate, which is to apply to all federal agencies,[7] to the end that

---

7. The NEPA recognizes in its declaration of National Environmental Policy: " . . . the profound impact of man's activity on the interrelations of all components of the natural environment, particularly the profound influences of population growth, high-density urbanization, industrial expansion, resource exploitation, and new and expanding technologi-

environmental values and concerns are included in all federal decision-making where the quality of the human environment may be significantly affected by federal action which would be proposed and recommended at the culmination of that decision-making process. The importance of this mandate to the future quality of our lives and the environment in which we live cannot be underestimated. In order to assure that the goals of the Act are achieved, certain procedural requirements are included in Section 102 of the Act, including Subsection 102(2)(C), which requires preparation and issuance of an environmental impact statement by the federal agency proposing or recommending the federal action.

█ The determination of whether an environmental impact statement must be issued entails a factual assessment and determination of the nature, extent and scope of the impact on the environment of the proposed federal action. Under the scheme of the NEPA, this threshold assessment is to be by the federal agency which is proposing or recommending the federal action. See *Hanly v. Mitchell*, 460 F.2d 640, at 644 (2nd Cir. 1972); *Hanly v. Kleindienst, supra,* at 828; *Joseph v. Adams, supra,* at 150–151.

█ Here, the plaintiffs have not yet afforded the FTC an opportunity to make that factual assessment. No allegation of fact or expert opinion in regard to environ-

mental effects has been introduced in the administrative proceeding. The plaintiffs have not moved to intervene for that limited purpose. Without the plaintiffs having pursued that initial step it is not reasonable to expect the FTC to involve themselves in a thorough inquiry into environmental effects of remedies that they may intend to order, before any final order. Something must trigger that process. Reason dictates that production of evidence which would bring the Commission to the conclusion that this is a case which may have a significant impact on the environment, is that triggering mechanism. If that approach were to be pursued by the plaintiffs here, the need for judicial review might well be eliminated.

Failure to require exhaustion in this case may encourage parties with environmental interests in anti-trust actions before the FTC, to pursue the protection of those interests and secure their rights under the NEPA initially through litigation in Federal District Court. The question of how compliance with the NEPA requirement for environmental impact statements can best be implemented and accommodated to an adjudicatory anti-trust proceeding has not yet been squarely before a federal court.[8] The FTC is charged with responsibility for enforcing anti-trust laws and that agency is in the best position to experiment and de-

---

cal advances and recognizing further the critical importance of restoring and maintaining environmental quality to the overall welfare and development of man, declares that it is the continuing policy of the Federal Government, in cooperation with State and local governments, and other concerned public and private organizations, to use all practicable means and measures, including financial and technical assistance, in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans."

8. The Federal Trade Commission acknowledged this fact in its opinion in the matter of the *Coca-Cola Company, et al.*, 91 FTC 517, at 666 (1978). There are two reported appellate decisions dealing with the applicability of the NEPA to Federal Trade Commission and adju-

dicatory proceedings. These are: *Gifford-Hill & Company, Inc. v. Federal Trade Commission,* 173 U.S.App.D.C. 135, 523 F.2d 730 (D.C.Cir. 1975) and *Mobil Oil Corporation v. Federal Trade Commission,* 562 F.2d 170 (2nd Cir. 1977). Neither of these cases has reached the question of whether an environmental impact statement must precede the final order of the FTC where there may be a significant environmental effect. *Gifford-Hill* relies heavily on the fact that evidence can be introduced in the administrative proceedings relating to the environmental impact of any remedy and that the administrative law judge in the FTC can determine whether an environmental impact statement is required before a final order is entered. *Gifford-Hill*, 173 U.S.App.D.C. at 138, 523 F.2d at 733. Both courts concluded that the actions before them were premature, for reasons different than those presented by the facts in this case.

velop procedures to assure compliance with the NEPA and consideration of environmental values and concerns within the process of enforcement of anti-trust laws. The fact that the NEPA scheme requires that all federal agencies comply with Section 102(2)(C) reinforces the position that the FTC must initially develop both the expertise and the processes to assure full and meaningful consideration of bona fide environmental concerns consistent with the spirit and rules of the NEPA. It is not the role of the federal courts to dictate those processes absent exigent circumstances which would warrant equitable intervention. This court need not and does not now reach the question of when in an adjudicatory proceeding within the FTC, Section 102(2)(C) of the NEPA must be complied with.

The effects upon the quality of the human environment which the plaintiffs have asserted in their pleadings are serious, but are largely socio-economic. Under the rule established by the Sixth Circuit in *Breckinridge v. Rumsfeld*, 537 F.2d 864 (6th Cir. 1976), an environmental impact statement is not required where the alleged adverse environmental effects are *primarily* socio-economic. The affidavits supporting plaintiffs' claims of environmental effects in this case show potential harms that are largely, if not primarily, socio-economic. The allegations fall short of a sufficient demonstration that irreparable harm to the environment would result in the absence of injunctive relief from this court. In addition, the hardship to the plaintiffs in directing them to exhaust their administrative remedies by seeking intervention in the on-going administrative proceeding does not outweigh the interests that are intended to be served by the exhaustion doctrine. Given that there are procedures to intervene within the FTC proceeding, the exhaustion doctrine is necessary to compel resort to those processes.

And, finally, it should be noted that in April of 1976, the American Federation of Grain Workers, AFL–CIO/CLC, moved to intervene in this same administrative proceeding to protect the interests of employees of these cereal companies for the purpose of introducing evidence to demonstrate the adverse effects that the remedies considered by the FTC would have on employment of persons within those companies. On September 13, 1978, the Commission affirmed the order of the original administrative law judge denying the union's application to intervene. This court has been informed that on November 1, 1979, the present administrative law judge certified to the Commission an amended motion for intervention filed by the union seeking reconsideration by the Commission of its original order denying intervention. On November 16, 1979, the Commission issued an order granting that motion to intervene, pursuant to an agreement reached between the union and the FTC Bureau of Competition Trial Staff. This development in the administrative proceeding is important to the matter before this court in two respects. First, the union, in the process of protecting its own interests and the interests of its membership, will introduce within the administrative proceeding, evidence of employment impact that can be expected to be suffered in Battle Creek should divestiture be ordered and implemented. Consequently, some of the socio-economic concerns raised by the City of Battle Creek, which they seek to compel the FTC to consider, will be considered on the record and in the process of decision-making by the administrative law judge. Secondly, this order demonstrates a flexibility within the FTC and offers encouragement that the process of intervention is a viable avenue open to the plaintiffs to present their concerns of fact and law to the Commission and is not as futile as the plaintiffs have suggested.

For these reasons, this court is without jurisdiction to consider the merits of the plaintiffs' claims and the plaintiffs are left to their administrative remedies.

This action is accordingly dismissed

and it is so ordered.