# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Application of CONSUMERS ENERGY
COMPANY to Increase Rates.

---

PHIL FORNER,

       Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

       Appellee,

and

CONSUMERS ENERGY COMPANY,

       Petitioner-Appellee.

UNPUBLISHED
June 21, 2018

No. 334276
MPSC
LC No. 00-017990

---

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

Appellant, Phil Forner, appeals as of right the May 20, 2016 order of the Michigan Public Service Commission (MPSC), affirming the decision of an administrative law judge to deny Forner's petition to intervene in this proceeding involving the March 1, 2016 application by petitioner-appellee, Consumers Energy Company (Consumers), for a rate increase. We affirm.

## I. FACTS

Consumers filed an application on March 1, 2016, seeking an increase of its electrical rates. Forner filed a petition to intervene in the matter and requested a declaratory ruling regarding the application of MCL 460.10a(7) and (8). Forner requested that the MPSC issue a declaratory ruling that MCL 460.10a(7) "is applicable in an electric utility rate case where charges for an appliance service plan, as allowed by MCL 460.10a(5) are included on the monthly electric utility bill pursuant to MCL 460.10a(8)." Forner alleged that, as an interested party, he is entitled to a full and complete hearing in accordance with MCL 460.6a(1) and (2)(a). Specifically, Forner sought to challenge Consumers' adherence regarding the allocation of

-1-

electric utility costs attributable to its appliance service program (ASP), in accordance with the requirements of MCL 460.10a(7) and (8).

Forner has a long history of challenging the allocation of costs for Consumers' ASP. In 2003, Forner filed a complaint with the MPSC alleging that Consumers had failed to properly allocate costs for its ASP in violation of the Code of Conduct and to prevent a subsidy to the ASP. The MPSC agreed with Forner and instructed Consumers to file a case in order to ascertain the subsidy amount created by the violation. As instructed, Consumers initiated MPSC Case No. U-14329 to address the ASP subsidy issue. Forner was permitted to intervene in that matter, asserting that postage costs should be considered or included in the calculation of the subsidy amount. The MPSC rejected Forner's argument that the cost of postage should be allocated when Consumers' ASP includes its advertising in Consumers' regular mailings. This Court affirmed the MPSC's ruling. See *Forner v Mich Pub Serv Comm*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2008 (Docket No. 270941), p 5.

In 2007, Consumers filed an application to raise its rates in MPSC Case No. U-15245. Consumers indicated an intention to include a subsidy for the ASP. Forner intervened in the proceeding, seeking the payment of interest on the monies to be refunded to electric customers and again asserted that postage costs should be included. This Court affirmed the MPSC's rejection of Forner's claims. See *In re Consumers Energy Application For Rate Increase*, 291 Mich App 106, 120-121; 804 NW2d 574 (2010).

In 2008, Consumers filed an application for a general rate increase. Forner was permitted to intervene. He again asserted rate payers received inadequate compensation in regard to the ASP allocations of charges and expenses. Specifically, Forner questioned the MPSC's failure "to consider the amendments to 2008 PA 286 in making its determination regarding the allocation of costs of Consumers' ASP and that the Commission failed to provide him a full hearing on the issues." The administrative law judge rejected Forner's claim, and the MPSC affirmed. Forner appealed, and this Court affirmed the MPSC's determination. See *In re Application of Consumers Energy Company to Increase Rates*, unpublished per curiam opinion of the Court of Appeals, issued October 30, 2012 (Docket Nos. 295287, 296625, 296633, 296640, 298476), p 12 (2013).

In 2010, Forner filed a complaint against Consumers, alleging a violation of MCL 460.10a as to "its accounting practices for its [ASP]," and requesting "the Commission require compliance with MCL 460.10a(7)-(9), order a refund to ratepayers for amounts improperly included in rates, award interest on those amounts found to be subject to refund, fine the utility for the violation of the statute, and order Consumers to pay Mr. Forner for his time and expense in bringing the complaint."

The administrative law judge determined that the issue to be addressed was "whether Consumers adequately accounted for the costs associated with the ASP to comply with MCL 460.10a(7) to (9)," and it found "that Consumers had not violated any of the statutory provisions that Mr. Forner argued applied." Further, the administrative law judge "rejected Mr. Forner's argument that the Commission" had not yet evaluated his claims regarding the allocation of costs for the ASP "following the April 22, 2004 effective date of 2004 Public Act 88 (Act 88)." Affirming the administrative law judge's analysis, the MPSC noted that the "ASP program is

operated out of the gas division," and that "[t]he Commission has approved an allocation factor for costs between these two divisions[.]" The MPSC proceeded to reaffirm its previous decisions, stating:

> The Commission is still convinced that absent incremental increase in postage costs due to the inclusion of ASP program bills, no postage needs to be allocated to the program directly. The provisions of 2004 PA 88 do not affect that determination, which has previously been affirmed by the appellate court.
>
> Mr. Forner has failed to demonstrate that Consumers has violated the statute or the Commission's previous orders. The Commission therefore concludes that Mr. Forner's complaint should be dismissed. Because he has not demonstrated any violation of statute, or Commission order, Mr. Forner is not entitled to compensation for any costs he incurred to bring this action.

The MPSC also contemplated Consumers' request to sanction Forner, but "decline[d] to impose sanctions," warning:

> Mr. Forner should not interpret the Commission's forbearance as an invitation for him to file yet another meritless complaint against Consumers and its ASP. The Commission is persuaded that Mr. Forner has likely exhausted all plausibly meritorious contentions that could be raised to support his personal crusade against Consumers' ASP. Mr. Forner would be well advised to consider the adverse consequences of having a future challenge to Consumers' ASP deemed vexatious by this tribunal.

In 2011, Consumers filed another application for a rate increase, with Forner filing an untimely motion to intervene. After the administrative law judge in that proceeding granted Forner's petition to intervene, Consumers appealed that decision to the MPSC, which reversed the administrative law judge's decision. In its decision, the MPSC concluded that Forner was improperly raising issues suited for a complaint case, not a rate case. Moreover, he was attempting to re-litigate issues that were already raised in Forner's previous complaint case.

As noted, the current litigation was initiated when Consumers filed an electric rate case petition in 2016 and Forner filed a petition to intervene, focusing again on the ASP. A hearing was conducted on April 12, 2016, with Consumers objecting to Forner's intervention, noting that Forner had raised issues previously regarding the alleged "violations of Act 88 with respect to the allocation of costs of the [ASP]." Citing Forner's involvement in previous cases U-16273 and U-16794, Consumers asserted that the MPSC had previously determined "that Mr. Forner's ASP claims were well settled, should not be re-litigated, and that a proper forum for complaints about the ASP is not an electric rate case but rather a complaint case." Further, Consumers referenced an affidavit by their witness, Andrew J. Bordine, affirming that Consumers did credit electric customers "in both the historical 2014 test year as well as the projected test year," and asserting that "customers are not being subsidized for the electric associated costs of the billing structure used to bill customers choosing to participate in its Appliance Service Plan." Forner responded, arguing that Bordine's affidavit was deficient in failing to provide "supporting documentation" regarding the $234,000 refund calculation, identifying "where the electric utility

ratepayers are actually credited and for what, for how many mailings, how many electric bills were included and what number they used to calculate that." Forner also referenced a document request he made to the MPSC under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, in an effort to verify compliance of the ASP with MCL 460.10a. When no documents were identified or remitted by the MPSC in response to the FOIA request, Forner asserted:

> It's odd that the law specifically calls out certain things specifically regarding the [ASP], but there is no document in the Public Service Commission records that shows that they're actually complying with. It's common knowledge they keep offering it, but yet there is no specific document at the Public Service Commission showing that they're complying with the law. We're supposed to just trust them.

Forner denied that any "published opinion" issued by this Court specifically

> says the Commission has addressed the application of MCL 460.10(a) 7 and 8. The Commission did address it, like I said earlier, in regards to the application of postage, but they never addressed whether or not the issue of billing costs, you know, is appropriate. . . . A simple search of Commission Orders doesn't show that they actually addressed meaningfully, substantially, how section 7 and section 8 should be applied.

While recognizing Forner's "legitimate concerns about the [ASP]," the administrative law judge denied Forner's petition to intervene, stating:

> I believe the holding of the Commission in Case No. U-16794, specifically the Order dated October 14, 2011 [sic], clearly holds that the issue is not relevant to a general rate case, and I think I am bound by that holding of the Commission.

Forner filed an appeal with the MPSC, challenging the denial of his petition to intervene. Forner contended the existence of a "BRIGHT LINE DISTINCTION" between the facts of the current case and the prior cases, including U-16794. Forner alleged Consumers was currently looking to obtain approval to allocate $234,000 "of electric utility cost" to the ASP. Citing MCL 460.6a(1) and (2)(a), Forner asserted he was entitled to a "full and complete hearing" because Consumers was attempting to allocate "electric utility expenses related to the ASP[.]" Forner further argued that the relationship between "electric utility O&M [operation and maintenance] expenses [and] the ASP" entitled him to intervene under MCL 460.6a(2)(b), because "[a]ny allocation of electric utility costs as statutorily required by MCL 460.10a(7)-(8) does in fact reduce the electric utility's total cost of service which thereby reduces the electric rates and should be part of every general rate case." He referenced the response to his 2016 FOIA request, asserting the absence of any "showing of how Consumers Energy came up with the $234,000; which again warrants intervention by Forner." Finally, Forner again argued that the MPSC "has yet to apply the provisions of MCL 460.10a(7)-(8) in a Consumers Energy general rate case."

The MPSC summarized Forner's concerns as comprising "his sole interest . . . to raise issues concerning Consumers' [ASP] as related to MCL 460.10a(7), MCL 460.10a(8) and the Code of Conduct that the Commission adopted in the December 4, 2000 order in Case No. U-

12134. Mr. Forner contends that Consumers' request for approval of expenses related to its ASP renders Mr. Forner's denial of intervenor status illegal. The MPSC granted Forner's application for leave to appeal, but denied the relief requested, explaining:

> Turning to the merits of Mr. Forner's argument, the Commission notes that on at least three prior occasions, Mr. Forner has attempted to intervene in Consumers' general electric rate cases to litigate issues concerning Consumers' operation of its ASP. In the Commission's orders in Case Nos. U-15245, U-15645, and U-16794, the Commission rejected Mr. Forner's effort to litigate such issues in a rate case proceeding.

> Mr. Forner contends that there is a "BRIGHT LINE DISTINCTION" between this case and his prior arguments, most notable those raised by him in Case No. U-16794. But, Consumers responds, and the Commission agrees, that the affidavit of [Bordine], Consumers' Director of Customer Management and Grid Infrastructure, which is attached to Consumers' answer to Mr. Forner's appeal, demonstrates that the alleged "BRIGHT LINE DISTINCTION" relied upon by Mr. Forner in this case is traceable to a mistake that was corrected prior to the ALJ's ruling on Mr. Forner's application for leave to appeal. The correction made by Mr. Bordine explains that Consumers is not requesting recovery of any expenses related to the ASP in this filing. According to Mr. Bordine's affidavit and a corrective filing made by Consumers on April 11, 2016, a page of Mr. Bordine's direct testimony that had contained a description of the Business Development and Customer Solution section has been corrected to clarify that Consumers was not requesting recovery of any expenses related to the ASP in this proceeding.

> Given this correction, the fact that the Commission has repeatedly indicated to Mr. Forner that such issues do not belong in a utility's general rate case proceeding, and the fact that the Commission's prior rulings have been upheld on appeal by the Court of Appeals in *In re Consumers Energy*, 291 Mich App 106; 804 NW2d 574 (2010) and *In Re Application of Consumers Energy to Increase Rates*, unpublished per curiam opinion dated October 30, 2012 (Docket No. 296640), the Commission finds that the ALJ's decision to deny Mr. Forner's petition to intervene in this proceeding should be affirmed.

Forner filed a petition for rehearing by the MPSC, asserting that the MPSC erred because Bordine's statements, as attached to Consumers' objections to Forner's petition to intervene, indicated "that the ASP program is an element in this case." Citing MCL 460.10a(7) and (8), Forner asserted that Consumers was required to "include expenses for the ASP program in its rate case as a matter of law." Forner alleged that the MPSC failed to consider "new evidence" submitted by Forner or to consider the entirety of Bordine's affidavit and that this Court's prior rulings do not address MCL 460.10a(7) and (8) and are inapplicable to his current allegations. At this time, Forner also raised contentions regarding violations of the Michigan Rules of Evidence (MRE) involving: (a) the taking of judicial notice of facts in dispute (MRE 201(b)), (b) the denial of his right to cross examine witnesses (MRE 401) and to impeach witness credibility (MRE 607), (c) the submission of evidence of witness character and conduct (MRE

613(b)), (d) challenging the admission of testimony by lay and expert witnesses (MRE 701 and MRE 702), and (e) the challenge of the credibility of hearsay statements by a party-opponent or statements made by a party-opponent when acting in the role of an authorized agent, employee, or coconspirator (MRE 806).

In denying Forner's petition for rehearing, the MPSC stated:

> Mr. Forner has shown no errors, newly discovered evidence, facts or circumstances arising after the hearing, or unintended consequences to merit a rehearing in this case. Mr. Forner's arguments in his petition for rehearing are substantively identical to the arguments in his petition for leave to intervene and his application for leave to appeal the ALJ's ruling. Mr. Forner elucidated similar points in Case Nos. U-15245, U-15645, and U-16794. The Commission was not persuaded by Mr. Forner's arguments in these earlier filings and its rulings against Mr. Forner in Case Nos. U-15245 and U-15645 have been upheld on appeal by the Court of Appeals in *In re Consumers Energy*, 291 Mich App 106; 804 NW2d 574 (2010) and *In Re Application of Consumers Energy to Increase Rates*, unpublished per curiam opinion dated October 30, 2012 (Docket No. 296640). As provided in Rule 437, a petition for rehearing may not be granted to rehash old arguments or express disagreement with the Commission's ruling. Further, Mr. Forner's claim that rules of evidence were violated is not persuasive. He is not a party to the case, lacks standing upon which to base this claim, and the evidentiary phase of the proceeding has yet to occur. The Commission finds that the petition for rehearing filed by Mr. Forner should be denied.

Forner filed his claim of appeal with this Court on August 11, 2016.

## II. STANDARD OF REVIEW

As recognized by this Court in *In re Application of Consumers Energy Co to Increase Electric Rates (On Remand)*, 316 Mich App 231, 236-237; 891 NW2d 871 (2016):

> The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

> A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963,

art 6, § 28; *Attorney General v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103, 108; 754 NW2d 259 (2008). If the language of a statute is vague or obscure, the PSC's construction serves as an aid in determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. *Id*. at 103-104. However, the construction given to a statute by the PSC is not binding on us. *Id*. at 103. Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

### III. ANALYSIS

Forner claims the MPSC erred in denying his petition to intervene. He asserts that his current claim pertaining to the ASP and the allocation of costs is distinguishable from his previous claims in earlier cases because those cases did not address the allocation of costs for the ASP under MCL 460.10a(7). Rather, the prior determination addressing cost allocations regarding the ASP was made under the Code of Conduct and not the applicable statutory provisions. Forner argues that various preclusion doctrines are inapplicable, and he disputes the position of the MPSC that rate cases are not the proper forum to address cost allocations pertaining to the ASP. He contends that because the method for cost allocation is statutorily defined, he should be permitted to intervene and be afforded a full opportunity for a hearing in accordance with MCL 460.6a. In addition, Forner asserts that the determination of costs or credits pertaining to the ASP, which affect electric customers, in gas rate cases deprives him and others of due process because they do not receive notice and because of their lack of standing to participate. We disagree.

At the outset, to be considered is whether Forner satisfied the criteria to demonstrate a right to intervene in this matter. The Mich Admin Code, R 792.10410, identifies the procedural requirements to intervene in an action:

(1) A person who is not a complainant, respondent, protestant, applicant, or staff, as defined in these rules, and who claims an interest in a proceeding may petition for leave to intervene. Unless otherwise provided in the notice of hearing, a petition for leave to intervene shall be filed with the commission not less than 7 days before the date set for the initial hearing or prehearing conference and the petition shall be served on all parties to the proceeding. All parties shall have an adequate opportunity to file objections to, and to be heard with respect to, the petition for leave to intervene. A petition for leave to intervene that is not filed in a timely manner may be granted upon a showing of good cause and a

-7-

showing that a grant of the petition will not delay the proceeding or unduly prejudice any party to the proceeding. Except for good cause, an intervenor whose petition is not filed in a timely manner, but who is nevertheless granted leave to intervene, shall be bound by the record and procedural schedules developed before the granting of leave to intervene.

> (2) A petition for leave to intervene shall set out clearly and concisely the facts supporting the petitioner's alleged right or interest, the grounds of the proposed intervention, and the position of the petitioner in the proceeding to fully and completely advise the parties and the commission of the specific issues of fact or law to be raised or controverted. If affirmative relief is sought, the petition for leave to intervene shall specify that relief. Requests for relief may be stated in the alternative.

The criteria to be met in order to qualify for intervention has been recognized in *Drake v Detroit Edison Co*, 453 F Supp 1123, 1127 (WD Mich, 1978)[1]:

> In order to have standing to bring any action a plaintiff must satisfy a two-pronged test. . . . First, plaintiff must show that he has suffered an injury in fact. Second, it must be demonstrated that the interests allegedly damaged are arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. [Citation omitted.]

As argued by Consumers, Forner does not meet the criteria to intervene. First, Forner is unable to demonstrate "an injury in fact." *Id*. His contentions regarding the cost allocations for the ASP are entirely speculative. Calculations have been made and implemented by the MPSC to compensate electric utility customers, which have been reviewed and approved on more than one occasion by the MPSC and this Court. Having received credits for the prior improper subsidy, as an electric customer, Forner is unable to demonstrate an injury. Second, as will be addressed further herein, Forner's claim is not being raised in the proper forum and, thus, he is unable to demonstrate the wrong that he asserts falls "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id*.

Forner is attempting to intervene in a "general rate case," which is defined as "a proceeding initiated by a utility in an application filed with the commission that alleges a revenue deficiency and requests an increase in the schedule of rates or charges based on the utility's total cost of providing service." MCL 640.6a(2)(b).[2] The MPSC recognized, based on

---

[1] "[F]ederal case law can only be persuasive authority, not binding precedent[.]" *NL Ventures VI Farmington, LLC v City of Livonia*, 314 Mich App 222, 237 n 3; 886 NW2d 772 (2015) (citation omitted). Cited as authority for the same proposition in *Mich Bell Tel Co v Pub Serv Comm*, 214 Mich App 1, 4; 542 NW2d 279 (1995).

[2] The citation to MCL 460.6a(2)(b) reflects the version of the statute in effect at the time of Forner's claim. Subsequently, MCL 460.6a was amended by 2016 PA 341, effective April 20,

Bordine's averments on behalf of Consumers on April 11, 2016, verifying an error in his testimony in Case No. U-17990, that Bordine "inadvertently described activities related to the [ASP]. However, [Consumers] is not requesting recovery of any expenses related to the ASP program in this filing." Bordine further explained that in accordance with "the Case No. U-12134 Code of Conduct and the provisions of MCL 460.10(7) and (8), [Consumers] does allocate electric expenses related to the ASP program. These ASP program expenses include billing costs, customer complaint costs, and call center costs." As a result, reductions or credits of $234,000 have been applied for electric rate consumers in 2014 and the test year ending in August 2017, "consistent with the Code of Conduct and the ASP program cost allocation methodology approved by the Commission," to "ensure that the electric utility customers are not paying costs attributed to the ASP program." Because Case No. U-17990 is a rate case, MCL 460.1 *et seq.*, Forner's arguments are misplaced, particularly given the absence of any ratemaking component pertaining to the ASP in Consumers' request. Forner's contentions of error in the calculation of credits applicable to the ASP to electric utility customers should instead be raised in a separate complaint, in accordance with MCL 460.58, which provides, in relevant part:

> Upon complaint in writing that any rate, classification, regulation or practice charged, made or observed by any public utility is unjust, inaccurate, or improper, to the prejudice of the complainant, the commission shall proceed to investigate the matter. The procedure to be followed in all such cases shall be prescribed by rule of the commission: Provided, however, That in all cases reasonable notice shall be given to the parties concerned as to the time and place of hearing. An investigation of any such complaint, and the formal hearing thereon, if such is deemed necessary, may be held at any place within the state and by any member or members of the commission, or by any duly authorized representative thereof. . . . The taking of testimony at such hearing shall be governed by the rules of the commission: Provided, That at the request of either party a record of such testimony shall be taken and preserved. Upon the completion of any such hearing, the commission shall have authority to make an order or decree dismissing the complaint or directing that the rate, charge, practice or other matter complained of, shall be removed, modified or altered, as the commission deems just, equitable and in accordance with the rights of the parties concerned. . . . [Footnote omitted.]

Thus, because Forner's concerns do not fall within the auspices of the ratemaking component of the utility, the MPSC's denial of his request to intervene was not in error.

This is not to suggest, however, that Forner's concerns are legitimate or that the filing of yet another complaint regarding the allocation of costs by Consumers with reference to the ASP is either necessary or would be successful. Primarily, Forner asserts that the MPSC and this

2017, and the definition of a "general rate case" is unchanged in content, but located now at MCL 460.6a(16)(b).

Court have not addressed or evaluated the ASP cost allocations to determine statutory compliance with MCL 460.10a(7) and (8). This contention is inaccurate.

Once again, the starting point is the statutory language of MCL 460.10a that is relevant to the ASP. This statute, which was enacted by 2004 PA 88, states in reference to an ASP, in relevant part:

> (1) No later than January 1, 2002, the commission shall issue orders establishing the rates, terms, and conditions of service that allow all retail customers of an electric utility or provider to choose an alternative electric supplier. The orders shall provide for full recovery of a utility's net stranded costs and implementation costs as determined by the commission.

> * * *

> (4) No later than December 2, 2000, the commission shall establish a code of conduct that shall apply to all electric utilities. The code of conduct shall include, but is not limited to, measures to prevent cross-subsidization, information sharing, and preferential treatment, between a utility's regulated and unregulated services, whether those services are provided by the utility or the utility's affiliated entities. . . .

> (5) An electric utility may offer its customers an appliance service program. Except as otherwise provided by this section, the utility shall comply with the code of conduct established by the commission under subsection (4). As used in this section, "appliance service program" or "program" means a subscription program for the repair and servicing of heating and cooling systems or other appliances.

> * * *

> (7) All costs directly attributable to an appliance service program allowed under subsection (5) shall be allocated to the program as required by this subsection. The direct and indirect costs of employees, vehicles, equipment, office space, and other facilities used in the appliance service program shall be allocated to the program based upon the amount of use by the program as compared to the total use of the employees, vehicles, equipment, office space, and other facilities. The cost of the program shall include administrative and general expense loading to be determined in the same manner as the utility determines administrative and general expense loading for all of the utility's regulated and unregulated activities. A subsidy by a utility does not exist if costs allocated as required by this subsection do not exceed the revenue of the program.

> (8) A utility may include charges for its appliance service program on its monthly billings to its customers if the utility complies with all of the following requirements:

(a) All costs associated with the billing process, including the postage, envelopes, paper, and printing expenses, are allocated as required under subsection (7).

(b) A customer's regulated utility service is not terminated for nonpayment of the appliance service program portion of the bill.

(c) Unless the customer directs otherwise in writing, a partial payment by a customer is applied first to the bill for regulated service.

(9) In marketing its appliance service program to the public, a utility shall do all of the following:

(a) The list of customers receiving regulated service from the utility shall be available to a provider of appliance repair service upon request within 2 business days. The customer list shall be provided in the same electronic format as such information is provided to the appliance service program. A new customer shall be added to the customer list within 1 business day of the date the customer requested to turn on service.

(b) Appropriately allocate costs as required under subsection (7) when personnel employed at a utility's call center provide appliance service program marketing information to a prospective customer.

(c) Prior to enrolling a customer into the program, the utility shall inform the potential customer of all of the following:

(*i*) That appliance service programs may be available from another provider.

(*ii*) That the appliance service program is not regulated by the commission.

(*iii*) That a new customer shall have 10 days after enrollment to cancel his or her appliance service program contract without penalty.

(*iv*) That the customer's regulated rates and conditions of service provided by the utility are not affected by enrollment in the program or by the decision of the customer to use the services of another provider of appliance repair service.

(d) The utility name and logo may be used to market the appliance service program provided that the program is not marketed in conjunction with a regulated service. To the extent that a program utilizes the utility's name and logo in marketing the program, the program shall include language on all material indicating that the program is not regulated by the commission. Costs shall not be allocated to the program for the use of the utility's name or logo. [MCL 460.10a.]

The statute was subsequently amended by 2008 PA 286, with effective dates of October 6, 2008 to April 19, 2017, but did not alter the statutory language of any of the provisions pertaining to an ASP. MCL 460.10a.[3]

Forner mistakenly contends that the MPSC and this Court have not evaluated compliance of the cost allocations by Consumers for the ASP's electric customers with reference to MCL 460.10a(7), which purportedly serves to distinguish his current claims of error from those addressed by the MPSC and this Court under the Code of Conduct. Forner implies that compliance with the Code of Conduct for the ASP does not necessarily translate or equate to conformance with MCL 460.10a(7).

As noted earlier, Forner filed a complaint with the MPSC in 2003, asserting a violation of the Code of Conduct pertaining to a subsidy to the ASP. Following a directive from the MPSC, Consumers initiated Case No. U-14329 to address the subsidy issue. Thereafter, decisions by the MPSC, affirmed by this Court,[4] calculated the subsidy and specifically referenced the Code of Conduct. The MPSC determined that the fair market price of $0.1040 per unit for the cost of billing services was applicable to the ASP subsidy and explained that "the purpose of this proceeding was to determine the amount of subsidy per unit for the use of Consumers' billing service by its unregulated affiliate and to determine whether Consumers has the requisite accounting and ratemaking authority to ensure that its unrelated services are charged the full amount of the subsidy." This decision was deemed to comply with Section III.C. of the adopted Code of Conduct.[5] Forner again challenged the amount of billing relief available to electric customers regarding the ASP costs in Case No. U-15245 in 2007, resulting in the MPSC's rejection of Forner's claims and this Court's affirmance of the MPSC's ruling. *In re Consumers Energy Application For Rate Increase*, 291 Mich App at 120-122.

In Case No. U-15645, the MPSC rejected Forner's assertion that the MPSC's failure to "consider the amendments to 2008 PA 286 in making its determination regarding the allocation of costs of Consumers' ASP . . . failed to provide him a full hearing on the issues." (MPSC

---

[3] MCL 460.10a was amended by 2016 PA 341, with an effective date of April 20, 2017. The new version of the statute omits any reference to an ASP.

[4] *Forner v Mich Pub Serv Comm*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2008 (Docket No. 270941).

[5] Provision III.C. of the Code of Conduct states:

> If an electric utility . . . provides services, products, or property to any affiliate or other entity within the corporate structure, compensation shall be based upon the higher of fully allocated embedded cost or market price. If an affiliate or other entity within the existing corporate structure provides services, products, or property to an electric utility . . ., compensation for services and supplies shall be at the lower of market price or 10% over fully allocated embedded cost and transfers of assets shall be based upon the lower of fully allocated embedded cost or market price.

Order, filing date of January 25, 2010, Case No. U-15645-0527.) This Court again affirmed the MPSC's ruling, stating, in relevant part: "However, PA 88 took effect in 2004, and Forner has presented no evidence or statutory history demonstrating that this amendment occurred after the previous PSC decisions, particularly in Case No. U-15245." *In re Application of Consumers Energy Co to Increase Rates*, unpublished per curiam opinion of the Court of Appeals, issued October 30, 2012 (Docket Nos. 295287, 296625, 296633, 296640, 298476), p 12.

Once again, in 2010, Forner filed a complaint against Consumers alleging specific violations of MCL 460.10a, and requesting that Consumers demonstrate compliance with MCL 460.10a(7) through (9). The administrative law judge explicitly identified the issues to be addressed as "whether Consumers adequately accounted for the costs associated with the ASP to comply with MCL 460.10a(7) to (9)." The administrative law judge determined that Consumers had not violated the referenced, or any, statutory provisions and "rejected Mr. Forner's argument that the Commission" had not yet evaluated his claims regarding the allocation of costs for the ASP "following the April 22, 2004 effective date of 2004 Public Act 88 (Act 88)." The MPSC affirmed the administrative law judge's decision, finding that Forner had failed to demonstrate "any violation of statute, or Commission order[.]" This Court again affirmed the MPSC's ruling, stating: "In light of the PSC and this Court's consistent jurisprudence relating to the issues [Forner] has repeatedly raised and the lack of any new factual or legal developments that put them in a new light, we affirm the PSC's rejection of [Forner's] objections." *Forner v Consumers Energy Co*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2014 (Docket No. 307626), p 3.

Forner is not entitled to a full and complete hearing under MCL 460.6a to pursue the equivalence of a fishing expedition to demonstrate Consumers' failure to comply with MCL 460.10a(7). Forner vociferously contends that Consumers is not properly or adequately identifying and allocating costs associated with the ASP, yet does not present evidence of any specific violation. In some respects, Forner's claims are the equivalent of placing the cart before the horse—seeking a hearing to ascertain the existence of a statutory violation, rather than identifying a specific statutory violation and procuring a hearing to correct or verify the error.

To substantiate his entitlement to a full hearing, Forner relies on language in MCL 460.6a(1), which states:

> The utility shall place in evidence facts relied upon to support the utility's petition or application to increase its rates and charges, or to alter, change, or amend any rate or rate schedules. The commission shall require notice to be given to all interested parties within the service area to be affected, and all interested parties shall have a reasonable opportunity for a full and complete hearing.

Forner, however, omits or ignores the context of this language as applicable to a utility seeking to "increase its rates and charges or alter, change, or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers" and the need to "first receiv[e] commission approval[.]" MCL 460.6a(1). In this instance, Consumers has specifically averred that it is not seeking to "increase," "alter," "change," or "amend" the cost allocations for the ASP, obviating the necessity of a "full and complete hearing." There exists no logical reason to

-13-

expend time, expenses, and resources to conduct a hearing on that issue because Forner's only challenge is to the allocation of costs to electric utility customers for the ASP, which has not changed. Forner's arguments regarding the application of MCL 460.6a are overly broad and inclusive.

The full extent of Forner's failure to identify a statutory violation of MCL 460.10a is effectively demonstrated regarding the administrative law judge's rulings and determinations in Case No. U-16273. On review, the MPSC explained, in relevant part:

> The [administrative law judge] concluded that MCL 460.10a does not impose requirements on the Commission in setting electric and natural gas rates beyond the requirement that if ASP revenues are included in setting utility rates, the Commission must also include the offsetting ASP costs. MCL 460.10a(10). The [administrative law judge] found that the cost allocation requirements contained in MCL 460.10a are to ensure that the utility operations do not subsidize the ASP. *See*, MCL 460.10a(4). If revenues for the ASP service exceed allocated costs, MCL 460.10a(7) declares that no subsidy exists. Therefore, she reasoned, when the issue is whether the utility has complied with the statutory cost allocation requirements, how the company's rates are set is not relevant. When the utility charges rates approved by the Commission, it does not violate MCL 460.10a. She noted that there is no requirement that the ASP "pay" its electric utility operations based on the statutorily required cost allocations. Therefore, the only determinations necessary to this case are whether the total cost allocations to the ASP are consistent with the statute's requirements and, if so, whether the ASP revenues exceed those costs.

> The [administrative law judge] further determined that Mr. Forner failed to demonstrate that Consumers had not allocated sufficient costs to the ASP. Consumers [submitted documents] reflect that for the time period covered by the complaint, Consumers allocated costs to the ASP as follows: direct costs: $12.5 million, and indirect costs: $21.7 million.

> The [administrative law judge] determined that bill-related costs include bill processing ($162,243) and bill payment processing costs ($65,489) for a total of $227,732. The [administrative law judge] noted that the Commission has repeatedly rejected Mr. Forner's contention that postage costs associated with the monthly bills should be allocated to the ASP, unless there is an incremental increase in cost due to inclusion of ASP materials. . . . [T]he Court of Appeals found that its previously approval of the Commission's decision on this issue in Case No. U-14329 should have preclusive effect.

> The [administrative law judge] rejected Mr. Forner's argument that the Commission has yet to make this determination following the April 22, 2004 effective date of 2004 Public Act 88 (Act 88). She noted that the Commission order in Case No. U-14329 was issued on February 9, 2006, and the Commission's order in Case No. U-15245 was issued on June 10, 2008.

-14-

Moreover, the [administrative law judge] found that Mr. Forner had not explained how the requirements of 2004 PA 88 would require a different result.

In addressing the allocation formula, the [administrative law judge] rejected Mr. Forner's contention that the costs to issue a bill and process payment should be borne on an equal percentage basis between the utility service(s) used and the ASP. She found Mr. Forner's limited view of the purpose of bills ignored numerous billing requirements imposed by statute, Commission rules, and company tariffs. . . .The [administrative law judge] determined that the analysis provided . . . justified the allocation of 1.9% of billing costs to the ASP based on the number of lines used to state the charges as a percentage of total lines in the bill. Consumers actually used 7.8% to allocate these costs.

Furthermore, the [administrative law judge] noted that once the postage costs are removed, Consumers already allocates more costs to the program than Mr. Forner argues are required. She concluded that Mr. Forner had failed to show that any adjustment of the bill-related cost allocation was warranted.

Moving on to call center costs, the [administrative law judge] noted that the company already allocates significantly more for the call-center costs in total than Mr. Forner has identified as attributable to electric operations. Thus, she reasoned, he had failed to show that the allocation is inadequate.

As to interest costs as a part of that allocation, the [administrative law judge] rejected Mr. Forner's argument that interest on the other costs allocated to the ASP is required. She found nothing in Section 10a that would require an allocation to the ASP of interest on these costs. She noted that the Court of Appeals had already affirmed the Commission's like determination on this issue.

Concerning the sharing of program margin, the [administrative law judge] concluded that there is no statute that requires any of the revenues associated with the ASP to be used to offset electric utility rates. MCL 460.10a(10) permits the Commission to consider such revenues, but does not require the Commission to do so. Moreover, she found, the Commission has addressed this issue in recent rate cases, and the question should now be considered settled. Therefore, the [administrative law judge] recommended that the Commission find no cause of action and dismiss the complaint. [Citations omitted.]

In affirming the administrative law judge, the MPSC noted "that the [administrative law judge] performed a detailed reasoned analysis and reached conclusions that are supported by the record and the law[.]" The MPSC concluded that Forner "failed to demonstrate that Consumers has violated [MCL 460.10a] or the Commission's previous orders," necessitating dismissal of the complaint.

On several occasions, the MPSC has analyzed the cost allocations for the ASP premised on the requirements of MCL 460.10a(7) and (8), obviating the premise of Forner's allegations. It is noted that Forner asserted in Case No. U-15645 that the MPSC had failed to consider 2008

amendments to MCL 460.10a regarding the ASP cost allocations, see 2008 PA 286. Such an argument is entirely disingenuous because the 2008 amendments did not alter any of the statutory language in MCL 460.10a relevant to the ASP. As such, demonstration of compliance by Consumers and rulings by the MPSC on this issue comport with the relevant statutory provisions regardless of whether they were enacted in 2004 or 2008. Absent any substantive changes in the statutory language, there is no need to revisit the issue.

The MPSC and Consumers assert that Forner's claims are precluded by res judicata and collateral estoppel. "[R]es judicata . . . bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Johnston v Sterling Mtg & Inv Co*, 315 Mich App 724, 756; 894 NW2d 121 (2016) (citation omitted). Conversely,

> [c]ollateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action. A decision is final when all appeals have been exhausted or when the time available for an appeal has passed. [*Id*. at 756 (citation omitted).]

Preclusion doctrines have been found to be "applicable to administrative decisions (1) that are 'adjudicatory in nature,' (2) when a method of appeal is provided, and (3) when it is clear that the Legislature 'intended to make the decision final absent an appeal.' " *William Beaumont Hosp v Wass*, 315 Mich App 392, 399; 889 NW2d 745 (2016). "To determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine whether they are similar." *Id*. (citation omitted). Based on the procedural similarities between MCR 2.209(C) and R 792.10410, the MPSC's determination regarding Forner's petition to intervene was adjudicatory in nature. Therefore, the decisions of the MPSC in Case Nos. U-15645 and U-16273 permitted the application of the preclusion doctrines in Case No. U-17990.

In his petition to the MPSC to appeal the denial of his request to intervene, Forner references a response to his FOIA request, indicating that it was granted in part and denied in part, stating:

> Documents related to part 1 of your request are included. The MPSC does not have any documents related to portions 2 and 3 of your FOIA Request. To the best of the LARA's [MPSC] knowledge, information, and belief, under the information provided by you or by any other description reasonably known to MPSC, the public records do not exist.

First, Forner fails to provide a copy of his FOIA request for comparison to the denial, precluding us from ascertaining with specificity what materials were requested.[6] Forner also fails to reference the FOIA request denial in the discussion section of his appellate brief. Second, Forner equates the failure to identify and provide the FOIA documents he requested with a complete failure to comply with the statutory requirements of MCL 460.10a. This comprises an incomprehensible leap of logic. As recognized by this Court:

> Defendant raises a number of additional arguments, none of which is supported by sufficient argument, citation of the record, or citation of supporting authority. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. [*Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) (citations omitted).]

Forner also argues, as an electric utility customer, that Consumers' determination of allocations regarding the ASP use of the electric utility billing system in gas rate cases violates his right to due process because of his lack of standing and entitlement to notice in a gas rate case. As recognized in *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 706; 736 NW2d 594 (2007):

> The principle of fundamental fairness is the essence of due process, and this is embodied in the rights to notice and an opportunity to be heard. But due process is also a flexible concept that calls for such procedural protections as the particular situation demands. [Citations and quotation marks omitted.]

There are two related problems with Forner's due process argument. First, he again ignores that the issue that he raises pertains to the allocation of costs between programs for the ASP, which is not appropriate in a rate case. Thus, Forner's lack of standing in a gas rate case is irrelevant because the allocation issue is deemed to be inappropriate in any rate case. Second, Forner is not precluded from raising such issues in an appropriate complaint, which he has done previously in accordance with a directive by the MPSC. A complaint affords Forner an opportunity to be heard in conformance with due process requirements. In addition, Forner's suggestion that publication of a notice that does not specifically indicate that cost allocations regarding the ASP are to be considered in a rate case necessarily renders the notice to be insufficient is without merit. Due process requires the provision of notice, which publication satisfies. Due process does not require that the notice be detailed with regard to the intricacies of all issues to be considered. "Due process in civil cases generally requires notice of the nature of the proceedings [and] an opportunity to be heard." *Hanlon v Civil Serv Comm*, 253 Mich App 710, 723; 660 NW2d 74 (2002) (citations omitted). Notice should be reasonably calculated to inform any

---

[6] The request replicated in Forner's appellate brief in this matter, asserts two numbered requests, not three as indicated by the response received from LARA. As such, we are uncertain if the documents provided are referencing the same materials.

-17-

interested parties "of the pendency of the action[,]" *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 574; 692 NW2d 68 (2004), but notice does not alleviate an interested party's obligation to investigate the relevancy of the proceeding to their specific interests. Further, the manner in which Forner approaches this argument or alleged problem is speculative regarding the possibility of a future situation that might arise. As this Court recently observed in *Gleason v Kincaid*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 340239); slip op at 3:

> An issue is moot when a subsequent event makes it impossible for this Court to grant relief. It is our duty to decide actual cases and controversies, that is, actual controversies arising between adverse litigants. A case that does not rest upon existing facts or rights and presents nothing but abstract questions of law is moot.

Forner also argues that the Michigan Rules of Evidence are applicable to his motion to intervene, claiming it was improper for the MPSC to strike testimony, presumably referring to Bordine's correction of testimony through an affidavit, and to preclude Forner from questioning witnesses and challenging their credibility. We disagree.

A decision or ruling involving an examination of the meaning of the Michigan Rules of Evidence, or of the applicability of a legal doctrine or rule, is reviewed by this Court de novo. *Alpha Capital Mgt v Rentenbach*, 287 Mich App 589, 615; 792 NW2d 344 (2010).

MCL 24.275 states:

> In a contested case the rules of evidence as applied in a nonjury civil case in circuit court shall be followed as far as practicable, but an agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. Irrelevant, immaterial or unduly repetitious evidence may be excluded. Effect shall be given to the rules of privilege recognized by law. Objections to offers of evidence may be made and shall be noted in the record. Subject to these requirements, an agency, for the purpose of expediting hearings and when the interests of the parties will not be substantially prejudiced thereby, may provide in a contested case or by rule for submission of all or part of the evidence in written form.

Similarly, R 792.10427 states:

> (1) The rules of evidence as applied in nonjury civil cases in circuit court shall be followed as far as practicable, but the commission may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs. Objections to offers of evidence may be made and shall be noted in the record.

> (2) Evidence, including records and documents in the possession of the commission, that a party desires or intends to rely on shall be offered and made a part of the record in the proceeding and other factual information or evidence shall not be considered in the determination of the case, except as otherwise permitted by law. Documentary evidence may be received in the form of copies or excerpts. Upon timely request, a party shall be given an opportunity to

-18-

compare the copy with the original. If the original is so voluminous as to make its entry in evidence impracticable, the evidence may be incorporated by reference if the materials to be incorporated are made available for examination by the parties at a time and place designated by stipulation of the parties or as directed by the presiding officer. The evidence shall not be admitted where a party has failed, upon timely request, to provide other parties with reasonable access to the original document referred to or excerpted.

(3) A party shall have the right of cross-examination and shall have the right to submit rebuttal evidence. Some surrebuttal evidence may be permitted at the discretion of the presiding officer or the commission.

Forner appears to confuse and conflate the application of the rules of evidence and his right to participate in a full hearing. In this instance, Forner's petition to intervene was denied, thereby retaining his status as a non-party to the proceeding. The language of R 792.10427 clearly indicates applicability to "[a] party." MCL 460.6a(1) provides that "all interested *parties* shall have a reasonable opportunity for a full and complete hearing." (Emphasis added.) Forner cannot expand his entitlement to exercise certain evidentiary rules when he lacks the status of a party in the proceeding.

In R 792.10410, petitions to intervene are addressed. Subsection (1) of that rule indicates, in relevant part, that "[a]ll parties shall have an adequate opportunity to file objections to, and to be heard with respect to, the petition for leave to intervene." In addition, R 792.10410(2) states:

A petition for leave to intervene shall set out clearly and concisely the facts supporting the petitioner's alleged right or interest, the grounds of the proposed intervention, and the position of the petitioner in the proceeding to fully and completely advise the parties and the commission of the specific issues of fact or law to be raised or controverted. If affirmative relief is sought, the petition for leave to intervene shall specify that relief. Requests for relief may be stated in the alternative.

The instructional component of R 792.10410(2) provides a petitioner the opportunity and mechanism to set forth the reasons asserted for his or her right to intervene in an action and the relief sought. The rules of evidence do not come into play in this part of the proceeding. Until the evidentiary aspect of a proceeding is initiated, the rules of evidence are not applicable.

Finally, Forner mistakenly equates the acceptance of the Bordine affidavit and Consumers' amendment of its petition with a failure to apply the rules of evidence. Consumers merely recognized an error in its petition and testimony by Bordine, which erroneously suggested that Consumers was seeking a rate increase or alteration of the ASP allocation. Consumers amended the petition and provided Bordine's affidavit to confirm and correct the error and denote that no changes were being sought with regard to the ASP. In accordance with

R 792.10415(4), "[t]he presiding officer may make provision for any party to request material and relevant corrections of the transcript within a reasonable time after the filing of each volume of the transcript." Contrary to the suggestion of Forner, this did not necessitate an evidentiary hearing.

Affirmed.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello